FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 10 2005

JAMES R. LARSEN, CLERK
DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RANDY BUCHANAN,<br><br>Plaintiff,<br><br>v.<br><br>WALLA WALLA COUNTY, and DEPUTY STEVEN DUEHN, in his personal and official capacity,<br><br>Defendants. | No. 04-CV-5136-AAM<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment. (Ct. Rec. 15). This matter was heard with oral argument on November 3, 2005, in Yakima, Washington. Plaintiff is represented by attorney David S. Mann; Defendants are represented by attorney Thomas R. Luciani. After reviewing the file, the briefs filed by the parties, and considering the argument of counsel, the court **DENIES** Defendants' motion for summary judgment.

## I. JURISDICTION

Plaintiff Randy Buchanan filed a complaint in Superior Court for Benton and Franklin Counties on November 12, 2004, against Defendants Walla Walla County (County), County Sheriff's Deputy Steven Duehn in his official and personal capacity, and Mary and

Doug Lundgren, private citizens and a marital community.[1] He alleges state law claims for false arrest, false imprisonment, and malicious prosecution. He also alleges federal civil rights claims under 42 U.S.C. § 1983 for "unconstitutional seizure and use of force" and "unconstitutional malicious prosecution." (Ct. Rec. 1-1, p. 6). Defendants removed the case to federal court based on the federal civil rights claim. (Ct. Rec. 1-1).

## II. BACKGROUND

Plaintiff manages a several hundred acre farm he owns with his parents. Part of the land is a cherry orchard bordered by State Route 12 and Dodd Road in Walla Walla County. Directly across Dodd Road, there is a convenience store, Crazy Mary's, that is owned and managed by Mary and Doug Lundgren. (Ct. Rec. 31, p. 3 (map)).

Due to several environmental factors, birds were causing excessive damage to Plaintiff's cherry crop. Plaintiff applied for and received permission from the State of Washington Department of Wildlife to shoot the birds and operate propane cannons to scare them, a common practice among orchard growers. (Ct. Rec. 30, p. 3). The Lundgrens also have cherry orchards and use propane cannons to scare the birds. In 2002, the Lundgrens converted a portion of their orchard into the convenience store. Since then, they have complained to the Buchanans and the sheriff about the noise of Buchanans' cannons, protesting that the shots frighten and annoy their customers.

---

[1] The Lundgrens have been dismissed pursuant to stipulation of the parties. (Ct. Rec. 20).

In May 2003, the birds were particularly troublesome, and Plaintiff added cannons. On May 17, 2003, between 4 p.m. and 6 p.m., someone turned off Plaintiff's cannons and let the propane leak out. He states in his affidavit that he had given the Lundgrens permission to turn off his cannons in the evening, but the latest "trespass" happened well before dark. He suspected the Lundgrens. With the cannons turned off, the birds were back in the orchard, eating the fruit. (Ct. Rec. 30, p. 3). After discovering the turned off cannons and propane loss, Plaintiff called the sheriff's office to report a trespass and request an on-site investigation. On May 18, after calling the sheriff's office again, Plaintiff took his shotgun to the orchard and began shooting in the trees to scare the birds. (*Id.* at 5).

Mary Lundgren was operating the store on May 18 when she observed Plaintiff pacing in his orchard and firing off his shotgun. She allegedly heard BBs fall on the canopy over the fuel station outside her store. Mrs. Lundgren called the sheriff, and Deputy Duehn was sent to investigate. The evidence of record (interviews, reports, and depositions) varies as to whether the BB shot rained down on the canopy, or fell on the canopy, or hit the canopy. There are also differing reports about whether Mrs. Lundgren actually saw Plaintiff fire toward the convenience store. In two of her statements, she did not say she saw Plaintiff fire his gun toward the store. In a 2005 deposition, she stated she saw him aim at the trees, pointing towards her store. (*See* Ct. Rec. 36, p. 8; *cf.* Ct. Rec. 17-2, p. 9 and Ct. Rec. 29, p. 10).

On his way to the convenience store, Deputy Duehn received a call from dispatch indicating Plaintiff was waiting for someone to come out and investigate his trespass report from the day before.

When the patrol car arrived at the store, Plaintiff thought it was responding to his trespass complaint. Deputy Duehn, however, first talked to Mrs. Lundgren and two customers (Bennett and Gravelie). In the statements written at the time of the incident, none of these people (including Mrs. Lundgren) stated that Plaintiff fired the shotgun at the store. (Ct. Rec. 17-3, p. 32-35). While interviewing the store occupants, the deputy did not look for BBs on the ground or on top of the canopy. He spent about a half hour talking to the store occupants and sitting in his patrol car, observing Plaintiff who, after a while, stopped shooting at birds, got in his truck, left the orchard, and returned with a camcorder. He set up the camcorder in the back of his truck and resumed patrolling his orchard with the shotgun. (Ct. Rec. 30, p. 6).

After waiting for the deputy to come over, Plaintiff called the sheriff's dispatch again, asked what the deputy was waiting for and insisted he come over with his camera to document the damage to his orchard. Dispatch relayed this information to Deputy Duehn in the parking lot. He instructed Plaintiff, through dispatch, to meet him on the county road without his shotgun. Plaintiff put his shotgun in the back of the truck where the camcorder was running.

Once the deputy got to the orchard, Plaintiff was complaining about the trespass. He denied ever shooting in the direction of the convenience store. (Ct. Rec. 30, p. 5-6). He did not appear to understand there was an issue with his shooting. Deputy Duehn asked where the gun was, and Plaintiff said it was in his truck. The deputy asked if it was loaded. Plaintiff said he would check. The deputy asked Plaintiff not to touch the gun. Plaintiff

replied he was not going to touch the gun, but kept walking toward the truck.[2] Plaintiff states in his affidavit that the deputy never told him to "stop, freeze or not move." (*Id.* at 7). When Plaintiff did not stop walking, the deputy pushed him down to the ground, handcuffed him, and took him to the patrol car in front of the Lundgrens (who were taking pictures of the encounter from their store). Plaintiff stated he was not told why he was being arrested. When he asked why he was going to jail, he was told he was a "public nuisance." (*Id.*). According to Plaintiff's statement, the Lundgrens posted in their store the picture they took of him being arrested.

Shortly after Deputy Duehn took Plaintiff away, Deputy Blackburn arrived and turned off all but one of Plaintiff's cannons. (Ct. Rec. 29, p. 60). In his affidavit, Blackburn acknowledges he did not have permission or a warrant to go on Plaintiff's property. (*Id.*). Plaintiff spent seven hours in jail. Deputy Duehn completed the citation charging Plaintiff with reckless endangerment, and the State proceeded with the prosecution. (Ct. Rec. 17-3, p. 27).

On June 31, 2003, Plaintiff filed a motion to dismiss the charges(*Knapstad* motion). Walla Walla County Deputy Prosecutor Hilde responded that material facts were in dispute, or in the alternative, the facts relied upon by the State established a prima facie case of guilt, and therefore dismissal was not

---

[2] Both parties have submitted only excerpts of depositions, so the record does not include the answers to many pertinent questions. For example, Deputy Duehn's answer, when asked whether he heard Plaintiff say he was not going to touch the gun, is not in the record. (Ct. Rec. 29, p. 20).

appropriate. (Ct. Rec. 17-3, p. 14). A Walla Walla County district court judge denied Plaintiff's motion in a letter, stating the evidence showed Plaintiff had a deadly weapon, that he was close to people and fired in the direction of the people, and was angry at the time.[3] (Ct. Rec. 17-3, p. 40.)

Trial was set for May 12, 2004, but the charge was dismissed by the prosecutor the day before because ballistic reports showed there was no danger at all from falling BBs fired from Plaintiff's property. (Ct. Rec. 29, p. 31, 43).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment allows the parties to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir. 1975), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the

---

[3] Defendants appear to contend the district court judge's denial of Plaintiff's motion to dismiss supports their argument that there was probable cause to arrest Plaintiff. (Ct. Rec. 16, p. 6-7). Judge Knowlton's denial was in the form of a letter consisting of three sentences, and he did not discuss the evidence on which he based his denial. (Ct. Rec. 17-3, p. 40) Further, the State's objection to the Plaintiff's motion to dismiss indicates the issue before Judge Knowlton was whether the facts relied upon (but not proved) by the State at the prosecution stage established a *prima facie* case of guilt, not whether there was probable cause to arrest. (Ct. Rec. 17-3, p. 14). This court finds that Judge Knowlton's order is not probative with regard to the issue of probable cause.

documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct, 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). The moving party bears the initial burden of informing the court of the basis of its motion and identifying evidence of record it believes demonstrates the absence of "a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Rule 56 does not require the moving party to support its motion with affidavits or other documents <u>negating</u> the opponent's claim." *Id.* (Emphasis in original). If the moving party satisfies its initial burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11, 106 S. Ct. 1348 (1986).

An opponent cannot rest on denials or mere allegations unsupported by factual data or in a pleading. *Id.*; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Further, only disputes over facts that might affect the outcome of the case under the applicable law will preclude entry of summary judgment. Factual disputes that are irrelevant will not be counted. *Anderson*, 477 U.S. at 250. In determining if summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Id.* at 255. Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *Id.* at 250. Conversely, any doubt about the existence of any issue of material fact requires denial

of the motion. *Id.* at 255.

**IV. DISCUSSION**

***A. 42 U.S.C. § 1983 CLAIMS***

Plaintiff asserts Deputy Duehn violated his constitutional rights because he arrested Plaintiff without a warrant and without probable cause. He also argues that his prosecution constitutes a reckless disregard of his constitutional rights which is actionable under § 1983. (Ct. Rec. 27, p. 5, 19). *See Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th Cir. 2002) (liability under § 1983 can arise from reckless disregard of the truth in a probable cause affidavit where officer knew informant was potentially biased and made no investigation to verify her allegations). A warrantless arrest, such as here, is unconstitutional unless the crime was observed by the arresting officer, or "under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the Defendant had committed a crime." *U.S. v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992) (*citing U.S. v. Potter*, 895 F.2d 1231, 1233-34 (9th Cir. 1990)).

"The elements of a section 1983 action are : (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Alford v. Haner*, 333 F. 3d 972, 975-76 (9th Cir. 2003). It is undisputed Deputy Duehn was acting under color of state law when he arrested Plaintiff. The controlling issue in deciding Plaintiff's claims is whether there was probable cause for the warrantless arrest. Defendants argue

there is not a genuine issue of material fact regarding probable cause to arrest the Plaintiff because the evidence shows that Deputy Duehn had a credible business owner report that Plaintiff was firing his gun in a way that put her customers in danger, that the Plaintiff admitted he had a gun and was firing it, and that he exhibited "the attitude he did not care what risk of injury he created." (Ct. Rec. 16, p. 6, 9). Defendants emphasize that Deputy Duehn was not required to make a hyper-technical evaluation of the trajectory of the BB shots when determining whether he had probable cause to arrest Plaintiff for reckless endangerment. *State v. Knighten*, 109 Wn.2d 896, 903, 748 P.2d 1118 (1988).

The crime of reckless endangerment is conduct that creates a "substantial risk of death or serious injury to another person." RCW 9A.36.050. Deputy Duehn argues he was only expected to make a practical, non-technical analysis of credible evidence to determine whether there was substantial risk of physical injury. (Ct. Rec. 16, p. 4). Plaintiff responds there was neither credible evidence nor obvious risk of substantial physical injury. He states he did not shoot towards the store and, therefore, did not believe he had created any risk of injury. (Ct. Rec. 28, p. 4). He argues the issue of probable cause, the key issue relied upon by Defendants in their argument for summary judgment on all claims, is disputed and must be decided by a jury. (Ct. Rec. 27, p. 5).

1. <u>Unconstitutional Seizure</u>

A warrantless arrest without probable cause is a violation of a person's right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment. *U.S. v.*

*Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574 (1975) (citations omitted). Probable cause is "a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, that a crime has been, is being, or is about to be committed." *Johnson v. Hawe*, 388 F.3d 676, 681 (9th Cir. 2004) (*citing Alford v. Haner*, 333 F.3d 972, 975 (9th Cir. 2003)). The totality of the circumstances includes the veracity, basis of knowledge and reliability of the information provided by informants. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1983). An informant's reliability and veracity is considered with other relevant evidence in determining probable cause. Citizen informants do not have the same presumptive reliability as a police officer, but require less to establish their reliability than criminal informants. *U. S. v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir.1986) (citations omitted). "A citizen's veracity may be established by the absence of an apparent motive to falsify and independent corroboration of the details provided by the informant." *Id.*

It is undisputed that the sheriff's office was aware of the conflict between the Buchanans and the Lundgrens regarding the propane cannons. (Ct. Rec. 29, p. 15, 62; Ct. Rec. 30, p. 4). As he drove to the convenience store on May 18, Deputy Duehn received calls from dispatch, reporting that both parties were complaining about the other. (Ct. Rec. 29, p. 15). During Deputy Duehn's investigation, the only person who allegedly heard falling BBs was Mrs. Lundgren, who wanted the cannons and the shooting stopped because it was alarming her customers. (Ct. Rec. 30, p. 4; Ct. Rec. 29, p. 61). In his affidavit, Plaintiff denies shooting toward the store and states he told this to Deputy Duehn. (Ct.

Rec. 30, p. 5, 7). The evidence does not reflect that Plaintiff has a prior criminal record. While observing Plaintiff prior to contacting him by the orchard, Deputy Duehn did not see Plaintiff doing anything "threatening." (Ct. Rec. 29, p. 17). Once Deputy Duehn contacted Plaintiff, the sequence of events leading up to Deputy Duehn's seizure of Plaintiff with physical force is disputed.[4] Consequently, the evidence presented and inferences drawn therefrom do not permit only one conclusion regarding the reasonableness of Deputy Duehn's actions.

It is undisputed that Deputy Duehn did not find BB shot in the parking lot of the store, as reported by Mrs. Lundgren. He did not try to verify there was BB shot on top of the canopy. (Ct. Rec. 29, p. 18). No BBs were ever recovered from the store site. (Ct. Rec. 29, p. 31). Plaintiff alleges a fired shot shell wad was found by Mr. Lundgren in the store parking lot **after** the deputies had left with the Plaintiff. (Ct. Rec. 30,p. 10). This evidence was referred to in the sheriff's office charging summary sent to the prosecutor, but without full description of who found it or when. (Ct. Rec. 17-3, p. 24-25.) The reliability of this evidence is challenged by Plaintiff since there were many casings lying in his orchard after he was taken away, and there was no way for law enforcement to verify where the recovered casing was actually found. The ballistic report presented by Plaintiff indicates a shot shell has "poor aerodynamics and it is quite unpredictable where it will end up [when shot]." (Ct. Rec. 29, p. 31). Plaintiff suggests that Mr. Lundgren had a motive to "find" the casings on the store property. (Ct. Rec. 30, p. 10).

---

[4] *See e.g.*, *supra* n2.

Viewing the evidence in the light most favorable to Plaintiff, this court concludes there is a genuine issue of material fact whether Deputy Duehn, based on the totality of the circumstances, had reliable information upon which to base a reasonable belief that a crime had been committed by the Plaintiff such as to warrant Plaintiff's arrest. Where a genuine issue of material fact exists that there was probable cause to arrest, that issue must be resolved by the jury. *Menotti v. City of Seattle*, 409 F.3d 1113, 1150 (9th Cir. 2005).

2. Unconstitutional Prosecution

Malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise subjecting a person to a denial of constitutional rights is cognizable under § 1983. *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998) (*citing Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987)). To establish a constitutional claim of malicious prosecution, a plaintiff must present evidence that he was prosecuted (1) with the purpose of denying him a constitutional right, and (2) with malice and without probable cause. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to actions against the prosecutor. They may be brought against those persons who wrongfully caused the charges to be filed. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

Defendants correctly argue that Deputy Prosecutor Hilde has prosecutorial immunity in performing his duties as prosecutor. Plaintiff does not dispute this and has not named Hilde as a party to the § 1983 claims. The presumption of prosecutorial immunity,

however, does not bar Plaintiff's claims. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Where local officials provided misinformation, concealed exculpatory evidence or "otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings," a § 1983 malicious prosecution claim may be brought against those officials. *Id.*

On May 18, 2003, Deputy Duehn issued a citation to the Plaintiff for a gross misdemeanor, certifying he had probable cause to believe the Plaintiff had committed the offense of reckless endangerment. (Ct. Rec. 17-3, p. 27). This constituted the complaint for the purpose of initiating the prosecution. *See Washington Criminal Rules for Courts of Limited Jurisdiction (CrRLJ)* 2.1(b). The matter was then referred to the prosecutor's office on May 28, 2003, for disposition. (*Id.* at 26.) In sum, Deputy Duehn initiated the prosecution which ultimately ended up being dismissed by the prosecuting attorney for lack of evidence. Deputy Prosecutor Hilde did not initiate the prosecution (did not file the charge) and did not make the probable cause determination.[5] Accordingly, if Deputy Duehn did not have

---

[5] In the Ninth Circuit, there is a presumption that a prosecutor exercises independent judgment in determining whether there is probable cause on which to file criminal charges. *Smiddy v. Varney ("Smiddy I")*, 665 F.2d 261, 266 (9th Cir. 1981); *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988). Filing of a criminal complaint immunizes investigating officers from damages suffered thereafter because it is presumed the prosecutor filing the complaint exercised independent judgment in determining that probable cause existed at that time. The presumption may be rebutted by a showing that the prosecutor was pressured or caused by the investigating officers to act contrary to her independent judgment. It may also be rebutted where there is evidence that the investigating officers knowingly presented false information

probable cause to arrest the Plaintiff, he is liable for all damages proximately caused by the arrest and the subsequent prosecution of the Plaintiff. *See In Re Bankruptcy Estate of Hansen*, 81 Wn. App. 270, 289-92, 914 P.2d 127 (1996).

Because there is a genuine issue of material fact whether Deputy Duehn had probable cause to arrest the Plaintiff, summary judgment is not appropriate on the § 1983 malicious prosecution claim.

3. Qualified Immunity

Deputy Duehn claims qualified immunity as a defense to Plaintiff's § 1983 claims. (Ct. Rec. 16, p. 9).[6] A qualified immunity analysis has two prongs: (1) taken in the light most favorable to the aggrieved party, do the facts alleged show the officer's conduct violated a constitutional right, and (2) if a constitutional right was violated, was that right clearly

---

to the prosecutor. *Smiddy I*, 665 F.2d at 266-67.

[6] Defendants argue the County is not liable for any § 1983 claim because Plaintiff has neither alleged nor presented evidence that his alleged unlawful arrest was pursuant to official policy. (Ct. Rec.16, p. 11-12); *see Monnell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Plaintiff's complaint appears to allege §1983 violations solely against Deputy Duehn in his personal capacity. (Ct. Rec. 1-1). Naming a governmental official in his official capacity is the same as naming the governmental entity itself as the defendant. *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873 (1985). At oral argument, Plaintiff confirmed he is not suing Walla Walla County under §1983. Pursuant to state law, however, a municipality can be liable for its employees' tortious acts under a *respondeat superior* theory. RCW 4.96.010. Therefore, the County remains a party with regard to the pendent state law claims, discussed *infra*.

established? *Beier v. City of Lewiston*, 354 F. 3d 1058, 1064 (9th Cir. 2004)(*citing Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)). To be a "clearly established right," a reasonable arresting officer would understand that, in light of pre-existing law, what he is doing violates a constitutional right.

Defendant Duehn argues only the first prong, that the arrest of the Plaintiff was constitutional based on his reasonable assessment that there was probable cause. He does not contend that a person's constitutional right to be free from arrest without probable cause is not clearly established. As discussed above, there is a genuine issue of material fact whether Duehn had probable cause to arrest the Plaintiff. A jury needs to determine whether there was probable cause.

***B. PENDENT STATE LAW CLAIMS***

Plaintiff asserts pendent state law claims for false arrest, false imprisonment, and malicious prosecution. (Ct. Rec. 1-1). The false arrest and false imprisonment claims require a showing of no probable cause to arrest. *Bender v. City of Seattle*, 99 Wn.2d 582, 587-590 (1983). The Washington Supreme Court has recognized five separate elements of the common law tort of civil malicious prosecution: (1) defendant initiated or continued the prosecution claimed to have been malicious; (2) the prosecution of the action lacked probable cause; (3) proceedings were instituted or continued through malice; (4) proceedings terminated on the merits in favor of the plaintiff or were abandoned; and (5) the plaintiff suffered injury or damage as a result of the prosecution. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558, 852 P.2d 295 (1993). Malice and want of probable cause constitute the

gist of a malicious prosecution claim. *Id.*[7] Probable cause is a complete defense to a malicious prosecution claim. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 499, 125 P.2d 681 (1942).

As Defendants have asserted the existence of probable cause as the gravamen of their defense for all claims, and the determination of this issue by the jury will resolve all pendent claims, it is appropriate for this court to maintain supplemental jurisdiction of the pendent state law claims. 28 U.S.C. § 1367 (a).

## V. CONCLUSION

The evidence submitted by the parties does not permit only one conclusion. Viewing the evidence presented in the light most favorable to the Plaintiff, there is a genuine issue of material fact whether Deputy Duehn had probable cause to arrest the Plaintiff. A jury will need to resolve that issue. Probable cause is a critical determination to be made by the jury with regard to the 42 U.S.C. §1983 claims and the pendent state law claims.

//

//

//

//

//

---

[7] "Malice" is a distinct element of a malicious prosecution claim. *See Peterson v. Littlejohn*, 56 Wn.App. 1, 10, 781 P.2d 1329 (1989). Defendants, however, did not argue for summary judgment on the basis that, as a matter of law, there was no "malice" by Deputy Duehn in arresting the Plaintiff.

Accordingly, Defendants' Motion for Summary Judgment (**Ct. Rec. 15**) is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and forward copies to counsel.

**DATED** this 10th day of November 2005.

ALAN A. McDONALD
SENIOR UNITED STATES DISTRICT JUDGE